UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------- X

EDGAR HERNAN PARRA SAAVEDRA,    :
     :
       Petitioner,        :
     :
     -against-      :
     :
ALISON ESTEFFANY JIMENEZ MONTOYA,   :
     :
       Respondent.      :

---------------------------------------------------------- X

**REPORT AND
RECOMMENDATION**

21 Civ. 5418 (EK) (VMS)

**Vera M. Scanlon, United States Magistrate Judge:**

Petitioner initiated this action under the Hague Convention on the Civil Aspects of International Child Abduction (the "Convention"), seeking the return of his minor child ("M.P.J.") to Colombia, the child's country of birth. Respondent, who is M.P.J.'s mother, concedes that she wrongfully removed M.P.J. from Colombia and retained him in the United States in violation of Petitioner's parental rights, but she opposed M.P.J.'s return on the ground that M.P.J. would face a grave risk of harm if he were returned to Colombia. The District Court, after holding an evidentiary hearing, considering written submissions and hearing oral argument, granted the petition and ordered M.P.J. returned to Colombia. See ECF No. 162. Petitioner now moves pursuant to 22 U.S.C. § 9007(b)(3) for an order directing Respondent to pay the expenses that he incurred in order to obtain the child's return. The District Court referred Petitioner's motion to this Court for a report and recommendation. For the following reasons, this Court respectfully recommends that the District Court grant Petitioner's motion at ECF No. 179 in significant part and award the legal fees and costs in favor of Petitioner and against Respondent in the amount of $128,363.31, but deny Petitioner's request for an award of personal expenses.

**I.  Background**

The Court assumes familiarity with the District Court's Findings of Fact and Conclusions of Law, see ECF No. 162, and recounts only the facts relevant to Petitioner's motion.  Petitioner and Respondent met in Bogota, Colombia in or around 2011.  See ECF No. 162 at 5.  Between 2011 and 2013, "Petitioner engaged in abusive conduct towards Respondent . . . including several incidents where he choked and bit her and called her offensive names."  See ECF No. 162 at 51.  The District Court credited Respondent's testimony as to certain instances of Petitioner's violence—some of which Petitioner admitted to—but the District Court's factual finding was "limited with respect to the frequency and severity of such abuse."  See id. at 10.  In approximately 2013, Petitioner and Respondent began living together.

M.P.J. was born in August 2014.  Id. at 13.  Respondent claimed that, after M.P.J.'s birth, Petitioner continued to be "aggressive and abusive" and to call her derogatory names.  Id. at 14.  Petitioner denied that he abused Petitioner after M.P.J.'s birth.  The District Court ascribed "somewhat less weight to [Respondent's] generalized accounts, but [did] not credit Petitioner's claim that the abuse ceased entirely after M.P.J.'s birth."  Id. at 14.  Respondent did not provide any evidence that M.P.J. witnessed Petitioner's acts of violence against Respondent.  Although Respondent's written direct testimony did not mention Petitioner ever using physical violence against M.P.J., Respondent testified at the evidentiary hearing to a specific incident during which Petitioner "slapped [M.P.J.'s] hind side."  Id. at 17.  "Respondent also testified that, to manipulate and control her, Petitioner 'always' threatened to reveal her past involvement in sex work and drugs to her family and others."  Id. at 15.  "This 'blackmail,' which began in 2013, became 'even scarier' after M.P.J. was born."  Id.

In early 2018, Respondent ended her relationship with Petitioner, and Petitioner moved to a separate residence.  Id. at 19.  Respondent and Petitioner shared custody of M.P.J. but never established a formal custody arrangement.  Id. at 20.  "During this period, Petitioner continued to support Respondent and M.P.J. financially.  He paid the rent and utility bills for the apartment to which Respondent and M.P.J. moved" subsequent to the separation.  Id. at 21.  "He also arranged and directly paid for M.P.J.'s education, health insurance, and medical care . . . and gave Respondent a car to use and money for additional expenses."  Id.

Between 2018 and 2020, "Respondent traveled outside Colombia on numerous occasions, often leaving M.P.J. with Petitioner for days or weeks at a time."  Id. at 22.  These travels included two seven-week trips to the United States, a four-day trip to Barcelona and a weekend trip to Mexico.  Id.  "Of her travels, M.P.J. accompanied Respondent on only one — her 2019 trip to the United States.  For the rest, the child stayed with Petitioner."  Id.  "Respondent did not testify to any concerns in leaving their son with Petitioner for extended periods of time."  Id.

In September 2020, Respondent brought M.P.J. to the United States.  "Petitioner provided his written consent authorizing M.P.J. to leave the country with Respondent from September 2, 2020 to October 7, 2020."  Id. at 23.  Respondent and M.P.J. did not return to Colombia in October as scheduled.  Instead, Respondent enrolled M.P.J. at a school in New York.  Id. at 23-24.  In December 2020, Respondent informed Petitioner that she would not be returning M.P.J. to Colombia.  Id. at 24.  Respondent testified as to her reasons for moving M.P.J. to the United States, stating "that while '[t]here were financial problems,' the 'principal motivation was that [her] entire family lives here' in the United States."  Id. at 25 n.16.  In January 2021, Petitioner prepared and filed an application with the ICBF, the Colombian Central

Authority for the Hague Convention, in an attempt to secure M.P.J.'s return to Colombia. <u>Id.</u> at 25.

## II. Procedural History

On September 29, 2021, Petitioner filed the instant action pursuant to the Convention, requesting, among other relief, an order requiring Respondent to return M.P.J. to Colombia. <u>See</u> ECF No. 1. The District Court issued an Order directing Respondent to show cause why the Petition should not be granted; prohibited Respondent from removing M.P.J. from the five boroughs of New York City and the Counties of Nassau and Suffolk; directed Respondent to bring all travel documents for herself and for M.P.J. to the scheduled show-cause hearing; and authorized the United States Marshal to effectuate service on Respondent. <u>See</u> ECF No. 8. "The proceeding was initially delayed by Petitioner's protracted difficulties in serving Respondent, which included numerous unsuccessful attempts to serve her at physical addresses in New York." <u>See</u> ECF No. 162 at 2. Service was accomplished after the Court ordered service by alternative methods, including by email and WhatsApp. <u>Id.</u> at 3.

"On February 17, 2022, Respondent finally appeared, and the Court set an expedited schedule for an evidentiary hearing on the Petition." <u>Id.</u> at 3. The evidentiary hearing took place over five days in May and September of 2022. <u>Id.</u> After the hearing, Petitioner and Respondent submitted proposed findings of fact and conclusions of law. <u>See</u> ECF Nos. 147, 149. The Court heard oral argument, and the parties made supplemental submissions. <u>See</u> ECF Nos. 156-157, 161.

The District Court issued a Memorandum and Order setting forth its findings of facts and conclusions of law. <u>See</u> ECF No. 162. The District Court found that Petitioner had made out a <u>prima facie</u> case of wrongful retention. <u>Id.</u> at 40. The District Court rejected Respondent's

"grave risk" defense, which was grounded on her assertion that would M.P.J.'s return to Colombia would "expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." Id. at 41. First, the District Court found insufficient evidence of a risk of harm directly to M.P.J. on the grounds that Petitioner's one-time use of physical force on M.P.J. was "disciplinary in nature"; the force occurred "more than five years ago"; and there was no evidence that to suggest that M.P.J. would face physical or psychological harm if returned to Colombia. Id. at 43-46.

Second, the District Court found that Respondent failed to demonstrate that Petitioner's physical and psychological abuse toward Respondent presented a grave risk of harm to M.P.J. As relevant here, the District Court noted the length of time between the last instance of physical abuse and M.P.J.'s removal from Colombia:

> Respondent's lack of testimony regarding recent abuse further weighs against a finding of grave risk. Respondent testified primarily to incidents of physical abuse between 2011 and 2013, before M.P.J. was born in 2014. Again, even fully crediting Respondent's testimony, the most recent incident between Petitioner and Respondent occurred in November 2017—shortly before the parties separated and almost three years before Respondent traveled with the child to the United States. There was no testimony regarding physical or verbal abuse during this post-separation period, despite both parties living in Colombia. Nor did Petitioner attempt any steps in Colombia, legal or otherwise, to remove M.P.J. from Respondent. Instead, the parties established an informal custody arrangement for their son, who lived primarily with Respondent, and they split time according to a consistent schedule of contact. During this time, Respondent was able travel freely, had access to money from sources other than Petitioner, and entered into a new relationship with Portela.

Id. at 54.

The District Court granted the Petition and ordered M.P.J. returned to Colombia. Id. at 61. The District Court stayed its Order "for fourteen days to allow the parties to confer as directed, and to permit Respondent to seek a stay from the Court of Appeals if she chooses." Id. at 61-62. The parties filed several letters following the issuance of the return Order, which

5

included a letter Respondent filed pro se, seeking to "appeal the decision with a stay" and stating that although she had paid her attorney $50,000, she does "not believe he had [Respondent's] best interests at heart during the legal proceedings." See ECF No. 163. Respondent's trial counsel also filed a request for an "emergency teleconference to address recent filings." See ECF No. 167. The District Court held a hearing to discuss the parties' failure to comply with the Court's Order "directing the parties to meet and confer regarding the method and logistics of M.P.J.'s return." See 4/21/2023 Order. At the conference, the Court denied Respondent's pro se motion for reconsideration, but it extended the stay of its Order to May 8, 2023. See ECF No. 171. Respondent's newly retained counsel filed a motion to extend the stay in order "to give Respondent a proper opportunity to seek a stay pending appeal at the Court of Appeals for the Second Circuit," see ECF No. 173, and Petitioner filed an opposition, see ECF No. 174. The District Court denied Respondent's motion. See 5/3/2023 Order. The Court of Appeals authorized the Clerk of the Court to grant an administrative stay pending determination by a three-judge motions panel. See ECF No. 176. A three-judge panel then denied Respondent's stay motion. See ECF No. 177.

The Clerk of Court entered a judgment in favor of Petitioner. See ECF No. 178. Petitioner then filed the instant motion for expenses. Respondent filed an opposition. See ECF No. 184. Petitioner replied.[1] See ECF No. 190.

---

[1] After Petitioner filed the instant fee motion, the parties made several additional filings. Petitioner filed a motion to enforce the Court's judgment seeking an Order giving "clear directives for the mechanics of return." See ECF No. 183. The Court granted the motion and issued an Order giving instructions for M.P.J.'s return. See 6/22/2023 Order. Respondent filed an emergency motion seeking: "a) reconsideration of this Court's June 22, 2023 Order and for a stay of its enforcement; b) the appointment of a Guardian ad litem for the child; c) a Court's in camera interview of the child; and d) an Order directing that the child be transported to Colombia, Medellin, with his maternal aunt at a time set by this Court." See ECF No. 185. The

### III. Legal Standards

The Convention "seeks 'to secure the prompt return of children wrongfully removed to or retained in any Contracting State,' and 'to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States.'" Abbott v. Abbott, 560 U.S. 1, 8 (2010) (quoting Convention, Art. 1). The International Child Abduction Remedies Act ("ICARA") was passed to establish procedures for implementing the Convention in the United States. See Ozaltin v. Ozaltin, 708 F.3d 355, 360 (2d Cir. 2013). ICARA provides for the commencement of "a civil action by filing a petition for the relief sought in any court which has jurisdiction of such action and which is authorized to exercise its jurisdiction in the place where the child is located at the time the petition is filed." 22 U.S.C. § 9003(b).

ICARA provides that a petitioner who prevails in a child abduction case shall be awarded necessary expenses incurred in connection with the petition "unless the respondent establishes that such order would be clearly inappropriate." 22 U.S.C. § 9007(b)(3). "Necessary expenses" under ICARA include legal fees, taxable costs and nontaxable costs such as travel expenses. See, e.g., Fridlund v. Spychaj-Fridlund, 09-273 (JMH), 2009 WL 4168192, at *1 (E.D.Ky. Nov. 23, 2009). "[A] prevailing petitioner in a return action is presumptively entitled to necessary costs, subject to the application of equitable principles by the district court," and "a losing

---

District Court denied the motion in full, and stated that it "takes no position on whether the child's maternal aunt may accompany the child back to Colombia with Petitioner and exercise (in effect) temporary custody over the child pending the determination of custody issues by the relevant Colombian bodies." See 6/27/2023 Order. Petitioner filed a letter accusing the Respondent of "attempting to sabotage" the District Court's Orders through certain unspecified ex parte proceedings elsewhere and seeking a telephone conference. See ECF No. 187. The District Court denied Petitioner's request absent clarity on what relief Petitioner was seeking. See 6/28/2023 Order. Respondent filed a motion seeking to withdraw her interlocutory appeal, see ECF No. 169, and her appeal of the final judgment entered in the action, see ECF No. 180, and the Court of Appeals granted the motion, see ECF No. 192.

respondent in a return action" has the burden of showing "why an award of 'necessary expenses' would be 'clearly inappropriate.'"  Ozaltin, 708 F.3d at 375; but see Ruth v. Marcoski, 898 F.3d 1306, 1310 (11th Cir. 2018).  "This caveat retains 'the equitable nature of cost awards,' so that a prevailing petitioner's presumptive entitlement to an award of expenses is 'subject to the application of equitable principles by the district court.'"  Souratgar v. Fair, 818 F.3d 72, 79 (2d Cir. 2016) (quoting Ozaltin, 708 F.3d at 375).

### a.  Financial Hardship

In determining whether an award of expenses incurred in connection with the petition is "clearly inappropriate," courts may consider whether the award would result in a financial hardship for the respondent.  The inquiry into financial hardship should focus on "whether respondent has clearly established that it is likely that [the respondent's] child will be significantly adversely affected by the court's award."  See Whallon v. Lynn, 356 F.3d 138, 140 (1st Cir. 2004); Norinder v. Fuentes, 657 F.3d 526, 536 (7th Cir. 2011) ("At least two courts of appeals have recognized that a fee award in a case under the Convention might be excessive and an abuse of discretion if it prevents the respondent-parent from caring for the child."). "Ultimately, the burden is on the [respondent] to show that her financial circumstances are so strained that an award of fees would affect her ability to care for the Children."  Romanov v. Soto, No. 21 Civ. 779 (MMH) (MCR), 2022 WL 3646325, at *5 (M.D. Fla. Aug. 24, 2022).

Even where a respondent has not shown that an award of expenses would be clearly inappropriate by showing that the award would adversely impact the child, some courts have reduced the award where the respondent has demonstrated an inability to pay.  See Romanov, 2022 WL 3646325, at *6 (holding that "the Mother has not proven that any award of fees would be clearly inappropriate because of her financial circumstances" but that, "[n]evertheless, the

Court may reconsider the Mother's financial circumstances when determining the <u>amount</u> of fees to be awarded) (emphasis in original); <u>Moonga v. Moonga</u>, No. 17 Civ. 2136 (TWT), 2018 WL 4026020, at *3-4 (N.D. Ga. Aug. 23, 2018) (finding that, although the respondent failed to demonstrate that fee award would render her unable to care for the child, a reduction of approximately one-third was appropriate given the respondent's income).

In <u>Whallon</u>, the district court reduced the petitioner's requested legal fees by 25% based on the respondent's claim she was she was "unable to pay for it, living on loans from family and friends." <u>Whallon</u>, 356 F.3d at 139.  Respondent appealed, arguing, <u>inter alia</u>, that the district court had not reduced the award enough because it "'refused to delve as deeply as was necessary' into respondent's financial condition to protect the child's best interests." <u>Id.</u> at 139-40.  The respondent based her argument on the grounds that "(1) she was 'financially unable to contribute to [petitioner's] attorneys' fees;' (2) she ha[d] 'not been employed outside of the home for over a year;' (3) she ha[d] 'no source of income;' and (4) she ha[d] 'obtained loans from family and friends' for support.  <u>Id.</u>  The First Circuit Court of Appeals affirmed on the grounds that that respondent failed to show that if the fees were not reduced further, "dire results would ensue for her child." <u>Id.</u> at 141.

### b.  Domestic/Intimate Partner Violence

"[I]n determining whether expenses are 'clearly inappropriate,' courts have considered the degree to which the petitioner bears responsibility for the circumstances giving rise to the fees and costs associated with a petition." <u>Souratgar v. Fair</u>, 818 F.3d 72, 79 (2d Cir. 2016) (collecting cases).  In cases where "the respondent's removal of the child from the habitual country is related to intimate partner violence perpetrated by the petitioner against the

respondent, the petitioner bears some responsibility for the circumstances giving rise to the petition." Id. "This concept is analogous to the equitable doctrine of unclean hands." Id.

In Souratgar, the district court granted a father's petition under the Convention to have his child returned to Singapore. The petitioner then sought an order directing the respondent mother to pay the expenses that the petitioner had incurred in connection with the petition under 22 U.S.C. § 9007(b)(3). Id. at 74. Notwithstanding the respondent mother's arguments that "her indigence and [the petitioner's] acts of violence against her rendered the requested award clearly inappropriate," the district ordered the respondent to pay the entirety of the expenses the petitioner sought. Id. The respondent appealed, and the Second Circuit reversed, holding that, because the respondent "established that [the petitioner] had committed multiple, unilateral acts of intimate partner violence against her, and that her removal of the child from the habitual country was related to that violence, an award of expenses to [the petitioner], given the absence of countervailing equitable factors, [was] clearly inappropriate." Id. at 75.

Circuit Judge Raymond J. Lohier, Jr. wrote in concurrence:

to emphasize that the majority opinion is extremely narrow in scope and confined to its particular facts, and to counsel district courts and panels of our Court not to draw from it any rule or presumption against awarding fees whenever a winning petitioner engages in acts of repeated "unilateral violence" against the losing respondent. As my colleagues in the majority recognize, such a presumption would conflict with traditional principles of equity that already permit district courts to consider such deplorable conduct in determining fee awards.

Id. at 82 (Lohier, J., concurring).

### c. Reasonableness Of The Proposed Award

The propriety of an award of attorneys' fees and costs pursuant to ICARA is dependent upon "the same general standards that apply when attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion." Souratgar, 818 F.3d at 79 (citation & quotations omitted). In order to determine the reasonable attorneys' fees to be awarded, courts

apply the lodestar method, which requires multiplying the hourly rates deemed reasonable for each attorney performing work on the case by the number of hours reasonably expended litigating the case.  See Hannah v. Walmart Stores, Inc., 803 F. App'x 417, 424 (2d Cir. 2020).

"Generally, '[t]he reasonable hourly rate is the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively.'" Nissim v. Kirsh, No. 18 Civ. 11520 (ALC), 2020 WL 3496988, at *3 (S.D.N.Y. June 29, 2020) (quoting Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections, 522 F.3d 182, 190 (2d Cir. 2008)). Courts have awarded up to $425 per hour in Hague Conventions cases.  See, e.g., Nissim, 2020 WL 3496988, at *3; In re One Infant Child, No. 12 Civ. 7797 (PKC), 2014 WL 704037, at *3 (S.D.N.Y. Feb. 20, 2014) (awarding $300 per hour to a "fourteen year associate"), rev'd on other grounds sub nom., Souratgar, 818 F.3d 72.

As to the number of hours for which compensation should awarded, "[i]n determining the number of hours reasonably expended for purposes of calculating the lodestar, the district court should exclude excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999).  Courts may also consider the degree of success obtained in comparison to the time expended when determining the reasonableness of the hours incurred in litigation. See Hensley v. Eckerhart, 461 U.S. 424, 436-37 (1983).

As noted above, supra, Sec. III, p. 7-8, ICARA provides for payment of non-legal expenses as well.

## IV. Discussion

Respondent opposes Petitioner's motion on three grounds: Respondent does not have the financial means to bear the financial burden of Petitioner's attorneys' fees; the removal of the child was related to violence that Petitioner had inflicted on Respondent; and the legal expenses Petitioner incurred are unreasonable under the circumstances.[2]  See ECF No. 184.  For the following reasons, the Court respectfully recommends that the District Court grant Petitioner's request for an award of expenses.

### a. Respondent's Financial Situation Does Not Preclude The Requested Award As There Is No Showing It Will Adversely Affect M.P.J.

Respondent has not demonstrated that an award of fees against her will adversely impact M.P.J.  The District Court ordered M.P.J. returned to Colombia, where Petitioner resides.  By Respondent's own representation, Petitioner earns a high salary and is capable of providing for

---

[2] While reviewing Respondent's opposition papers, the Court discovered that two pages appeared to be missing from Respondent's ECF filing: the second page of the main declaration (ECF No. 184), and the second page of the Ms. Montoya's declaration (ECF No. 184-1).  At the Court's request, Respondent's counsel emailed corrected documents to the Court, and the Court replaced the incomplete documents with the complete documents on the docket.  Apparently believing that Respondent unilaterally updated the documents on the docket without notice to Petitioner, Petitioner filed a letter requesting "that the Court reject Respondent's latest filing and issue a report and recommendation in relation tothe [sic] pending costs motion as it has been fully submitted for approximately 8 months."  See ECF No. 193.  Respondent filed a letter in response stating that the omission of the pages was inadvertent.  See ECF No. 194.  Petitioner filed a letter in reply stating that, at the time of filing, he "did not notice and was not alerted to the fact that there were any 'missing pages' from Respondent's opposition."  See ECF No. 195.  Petitioner argues that "Responding to Respondent's new opposition would require a significant amount of work from Petitioner" and "repeats his request that a report regarding the costs motion be issued based on the filings as originally uploaded in May and June 2023.  See id.  The Court finds it difficult to believe that Petitioner did not notice that the opposition was missing pages, as the declarations in question do not make sense when read without their second pages.  Had Petitioner diligently reviewed Respondent's opposition, he would have had the opportunity to notify the Respondent of the oversight and request service of the corrected documents.  By Order dated February 15, 2024, the Court gave Petitioner an opportunity to make a submission as to the substance of the missing pages, but nothing was submitted by the February 19, 2024 deadline.

M.P.J.  The record demonstrates that Petitioner previously financially supported both M.P.J. and Petitioner and paid for M.P.J.'s education, health insurance and medical care.  See ECF No. 162 at 21.  Respondent has not demonstrated that M.P.J. will not be provided for in Colombia. Respondent also has not identified any limitation that the award would impose on her ability to provide for M.P.J., such as an inability to visit M.P.J. in Colombia.

Respondent cites In re Application of Stead v. Menduno, 77 F. Supp. 3d 1029, 1038 (D. Colo. 2014), for the proposition that "lack of income can make an award of attorney's fees 'clearly inappropriate.'"  See ECF No. 184 ¶ 7.  In Stead, the Petitioner did not seek attorneys' fees because he was represented pro bono, and instead sought only costs.  The court found "that an award of filing fees and deposition costs is inappropriate in this matter, given the petitioner's pro bono representation and respondent's relatively low salary, total savings of slightly over $2,000, the fact that respondent spends 80% of her income on housing, and the fact that most of her other expenses relate to providing for A.C.S."  Here, by contrast, Petitioner was not represented pro bono.  Petitioner's attorney charged Petitioner an hourly rate of $300, which counsel represented was a discounted rate "in light of the State Department's referral for pro bono or subsidized representation."  See ECF No. 179-3 at 1.  Thus, this case is distinguishable from Stead.

As Respondent has not demonstrated that "dire results would ensue for her child" as a result of an award of expenses, see Whallon, 356 F.3d at 141, she has not demonstrated that an award of fees would be "clearly inappropriate" on this basis.

### b. Respondent's Financial Circumstances Do Not Warrant A Reduction In The Award Of Expenses

Respondent has not provided sufficient evidence that her financial circumstances would render any award of Petitioner's expenses "clearly inappropriate."

In terms of documentary evidence, Respondent provided her 2022 tax returns showing a "total income" for that year of $13,500.00, see ECF No. 184-4 at 3; financing documents for $40,559.02 a vehicle, see ECF No. 184-5 at 2-3; a Lyft account statement representing payments of $222.97 in May 2023, see id. at 5; and bank account statements from 2023 evidencing a balance of $895.40 in January, with $7,903.87 in deposits; $3,722.25 in February, with $7,694.00 in deposits; $2,465.40 in March, with $9,285.00 in deposits; $1,289.23 in April, with $5,196.40 in deposits; and $1,289.73 in May, with $19,505.50 in deposits, see ECF No. 184-6 at 2, 10, 20, 32, 38.  In terms of her declaration, Respondent represents that "she generated approximately $13,500.00 working as a babysitter, and now supplements her income as much as possible by working for Uber and/or Lyft."  See ECF No. 184 ¶ 5; see also ECF No. 184-1 ¶¶ 9, 13-14.  She also highlights her financial condition by stating that she "begged and borrowed from family members and friends" to retain her attorney in this action.  ECF No. 184-1 ¶ 10 (citation omitted).

Respondent's submission does not persuade the Court that her circumstances warrant the Court's exercise of its discretion to reduce the award to Petitioner.  The submission is lacking in any meaningful detail as to Respondent's capacity to find more remunerative employment or a longer-term view of her financial situation.  The evidence offered by Respondent sporadically covers various months and years and does not provide the Court with a consistent and reliable picture of Respondent's financial condition.  Further, Respondent and Respondent's counsel omit from their respective declarations that, in terms of her annual income, at least as of June 15, 2023, Respondent had been employed at Fast Solutions Services Corp. since January 9, 2023, and that she had been earning $900.00 per week, as was stated in a separate filing, see ECF No. 184-2 at 6; this omission is, at best, misleading and leads the Court to question the completeness

of the information provided by Respondent.  In addition, Respondent's bank account statements from January 2023 to May 2023 reflect a total of $49,854.77 in deposits, for much of which the source is not ascertainable.  These deposits, as well as numerous unexplained withdrawals, lead the Court to find Respondent's description of her income to be so unreliable that the court cannot reasonably base a reduction in any award on the Court record.  This availability of these significant unspecified funds further evidences that Respondent has not demonstrated that her financial circumstances warrant this Court's exercise of discretion to reduce an otherwise appropriate expenses award.

### c. Alleged Intimate Partner Violence Does Not Render This Expenses Award Inappropriate

Respondent has failed to demonstrate that her removal of M.P.J. from Colombia was directly related to Petitioner's violent and/or abusive conduct, although she presented evidence of such conduct to the Court.  The District Court did not find that this historical conduct justified Respondent's conduct.  Respondent argues that "it was the intimate partner violence perpetrated by the Petitioner against the Respondent that led the Respondent to flee Colombia."  ECF No. 184 ¶ 10.  She argues that, "[t]o allow Petitioner to receive an award of costs and fees in this action will only revictimize the Respondent and will basically set the dangerous precedent that as long as a Petitioner wins repatriation, the losing side will have to pay fees, even if Petitioner is a perpetrator of egregious domestic violence."  Id. ¶ 11.

Respondent's arguments are belied by the record evidence.  As the District Court noted, "even fully crediting Respondent's testimony, the most recent incident between Petitioner and Respondent occurred in November 2017—shortly before the parties separated and almost three years before Respondent traveled with the child to the United States."  ECF No. 162 at 54.  In the years leading up to Respondent's removal of M.P.J. to the United States, Respondent left M.P.J.

in Petitioner's care "for days or weeks at a time" while traveling outside Colombia, and she did not testify to any concerns she had about leaving M.P.J. with Petitioner.  Id. at 22-23. Respondent therefore cannot show that an award of expenses against her is clearly inappropriate on this basis.

### d.  Respondent Has Not Shown A Good-Faith Belief In The Integrity Of Her Actions

Respondent, who "concedes that she wrongfully removed the child from Colombia and has retained him in the United States, in violation of Petitioner's parental rights," see ECF No. 162 at 1, nevertheless vigorously opposed the Petition throughout the litigation, which caused both parties to incur substantial legal fees.  Respondent testified at the evidentiary hearing that the "principal motivation" for removing M.P.J. to the United States, "was that [her] entire family lives" in the United States, which directly contradicts her argument that the removal was related to domestic/intimate partner violence.  ECF No. 162 at 25 n.16.  This admission undermines any argument that Respondent had a reasonable basis for removing the child from Colombia.  See Ozaltin, 708 F.3d at 375-76 (reversing award of expenses where respondent had "a reasonable basis" for removing the children to the United States).  Respondent bears the burden of proof of showing that her actions were legal or justified in order to avail herself of this ground to oppose an expenses award.  Id.; Rath, 898 F.3d at 311.  Respondent has failed to carry this burden.

### e.  Respondent Has Not Demonstrated The Fees And Legal Expenses Petitioner Incurred Are Unreasonable

Respondent argues that the legal expenses sought are unreasonable in light of the cost of her own expenses.  See ECF No. 184 at 4.  Respondent's trial attorney charged her a flat fee of $50,000.00.  At the time she filed her opposition, Respondent claimed that she still owed her trial attorney $35,180.00, and that she had paid her current attorney $21,500.00.  See ECF 184-1. Respondent's payment of her own legal bills appears to have been substantially facilitated by

16

loans from family members.  See ECF No. 184-2.  Respondent does not challenge Petitioner's counsel's hourly rate or argue that any of the specific billing entries are inappropriate. Respondent also does not challenge the reasonableness of the nontaxable costs.  Nonetheless, the Court has reviewed Petitioner's supporting materials for his expenses request and finds that, although his legal fees and taxable expenses are reasonably supported, his request for nontaxable costs is lacking in any reasonable support.

The Court reviewed Petitioner's counsel's invoices and the docket, and observed that the invoices appear to represent reasonably performed legal work consistent with the demands of the litigation.  The Court finds that $300 per hour is a reasonable hourly rate for Petitioner's counsel given the level of work performed.  See In re One Infant Child, 2014 WL 704037, at *3.

The Court expended considerable time and effort to parse through the exhibits filed in support of Petitioner's claim for attorneys' fees and costs, see generally ECF No. 179-7-17-13, given that many of the pages in the invoices were filed out of order, that the invoices contain arithmetic errors, and that Petitioner does not explain the overlap between the expenses claimed in the attorney invoices and the expenses claimed in the attached invoices, of which the Court is certain that there are several instances.

Petitioner submitted six invoices from his counsel.  These invoices represent a total of $128,363.31, which includes $121,935.00 in attorneys' fees, representing 406.45 hours of work at the rate of $300 per hour,[3] and $6,428.31 in costs.  The first invoice, see ECF No. 179-7 at 1, 5, is for services rendered from July 24, 2021 to October 22, 2021; the total fees and expenses

---

[3] Petitioner's calculation of 407.5 hours of work expended for a total amount of attorneys' fees of $121,710, see ECF No. 179 at 3, is incorrect.

incurred were miscalculated by Petitioner as $11,807.00, instead of $11,972.00, and the remaining amount of the retainer, which is $3,028 and not $3,058 as calculated by Petitioner, is an error that carries throughout the invoices. The second invoice, see id. at 2-3, is for services rendered from October 25, 2021 to February 9, 2022; the invoice for Fred Ogier is listed incorrectly as $765, in view of the actual invoice from Fred Ogier separately provided, which lists the invoice amount as $740.43, see ECF No. 179-13 at 2. The third invoice, see ECF No. 179-7 at 6, 14, is for services rendered from February 11, 2022 to March 24, 2022. The fourth invoice, see id. at 7-13, is for services rendered from March 27, 2022 to March 9, 2023. The fifth invoice, see id. at 15-16, is for services rendered from April 23, 2023 to April 28, 2023. The sixth invoice, see id. at 17-18, is for services rendered from May 2, 2023 to May 29, 2023. The Court finds that legal fees and costs in the amount of $128,363.31, which incorporates the above-noted corrections, are reasonable.

Petitioner also submitted various exhibits in support of his request for an award of separate expenses.

Petitioner's request for $9,440.00 for expert fees, see ECF No. 179 at 6; ECF No. 179-1 at 1, is denied; the exhibit submitted in support, see generally ECF No. 179-9, states that the expert would charge $42 million pesos, and, even crediting Petitioner's counsel's affidavit that the exchange rate between Colombian pesos and dollars is 0.00023, Petitioner's calculation would be incorrect.

Petitioner's request for $1,441.00 for transcripts, see ECF No. 179 at 6; ECF No. 179-1 at 1, is denied as duplicative; these amounts, see generally ECF No. 179-11, are already accounted for in the fourth invoice from Petitioner's counsel referenced above.

Petitioner's request for $407.00 for the filing fee, see ECF No. 179 at 6; ECF No. 179-1 at 1, is denied as duplicative; this amount is already accounted for in the first invoice from Petitioner's counsel referenced above.

Petitioner's request for $1,046.00 for service of process fees, see ECF No. 179 at 6; ECF No. 179-1 at 1, is denied as duplicative. The $53.83 FedEx receipt, $35 for copies, $150 for courier services, and $5 for a money order, see ECF No. 179-12 at 1-2, are likely already encompassed within the $240.00 for expenses claimed in the first invoice from Petitioner's counsel referenced above. The $25.00 receipt from the Court for and itemization of certified copies, see id. at 1-2, is already encompassed within the expenses claimed in the first invoice from Petitioner's counsel referenced above. The $150.00 charge from the United States Marshal Service, see id. at 2, is already encompassed within the expenses claimed in the first invoice from Petitioner's counsel referenced above. The $278.25, $75.00, and $303.25 for service of process, see id. at 3-5, are already accounted for in the second invoice from Petitioner's counsel referenced above.

Petitioner's request for $1,765.00 for private investigator fees, see ECF No. 179 at 6; ECF No. 179-1 at 2, is denied as duplicative; these fees, reduced as reflected in the exhibit referenced above, see ECF No. 179-13 at 2, are already accounted for in the second invoice from Petitioner's counsel referenced above.

Petitioner's request for $540.00 for translations, see ECF No. 179 at 6; ECF No. 179-1 at 2, is denied; the Court does not credit Petitioner's unsubstantiated declaration, lacking any detail, submitted in support of this request, see ECF No. 179-1 at 2.

Petitioner's request for $980.70 for air travel, see ECF No. 179 at 5; ECF No. 179-1 at 1, is denied; the exhibit submitted in support, which is an email reflecting air travel, see generally

ECF No. 179-8, does not reflect any price.  Petitioner's request for $435.00 for accommodations for travel to New York, see ECF No. 179 at 6; ECF No. 179-1 at 1, is denied; the exhibit submitted in support, see generally ECF No. 179-10, is in Spanish and is untranslated, and, even crediting Petitioner's counsel's affidavit that the exchange rate between Colombian pesos and dollars is 0.00023, Petitioner's calculation would be incorrect.  Petitioner's request for $750.00 for food and transportation costs in New York, see ECF No. 179 at 6; ECF No. 179-1 at 1, is denied; the Court does not credit Petitioner's unsubstantiated declaration, lacking any detail, submitted in support of this request, see ECF No. 179-1 at 1.

The Court respectfully recommends that the request for expenses other than those included in counsel's invoiced be denied.

## V.  Conclusion

For the foregoing reasons, this Court respectfully recommends that the District Court grant Petitioner's motion in significant part and award legal fees and expenses incurred in securing the child's return in favor of Petitioner and against Respondent in the amount of $128,363.31, but deny the motion as to nontaxable personal expenses.

## VI. Objections

This report and recommendation will be filed electronically.  Any written objections to this report and recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b).  Any request for an extension of time for filing objections must be directed to the District Judge prior to the expiration of the fourteen-day period for filing objections.  Failure to file objections within fourteen days will preclude further review of this report and recommendation either by the District Court or the Court of Appeals.  See Miller v. Brightstar Asia, Ltd., 43 F.4th 112, 120 (2d

Cir. 2022) (stating that, "although Rule 72 applies only to the district court's review of a report and recommendation, this court has adopted the rule that when a party fails to object timely to a magistrate's recommended decision, it waives any right to further review of that decision") (internal citation & quotations omitted).

Dated: Brooklyn, New York
February 23, 2024

*Vera M. Scanlon*
VERA M. SCANLON
United States Magistrate Judge